UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| J.H. BERRA PAVING CO. INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-02148-NCC |
| LEGENDARY MOTORCAR COMPANY LTD and SCOTT SINCLAIR, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This case is before the Court on Defendants Legendary Motorcar Company Ltd. and Scott Sinclair's (collectively "Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11). The motion has been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 14). For the reasons stated herein, the Defendants' Motion to Dismiss is **GRANTED** and this action is **DISMISSED, without prejudice**.

### I. Legal Standard for Review

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a party may move to dismiss claims for lack of personal jurisdiction. To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party is required to make a prima facie showing of jurisdiction based on the pleadings, affidavits, and exhibits. *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2001). It is the plaintiff who bears the ultimate burden of establishing the existence of personal jurisdiction by a preponderance of the evidence. *Creative Calling Solutions, Inc. v. LF*

*Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). At the motion stage, an action should not be dismissed for lack of jurisdiction if the evidence, viewed in a light most favorable to the plaintiff, is sufficient to support a conclusion that the exercise of personal jurisdiction over the defendant is proper. *Id*.

## II. Background

This case arises out of a contractual dispute between Plaintiff J.H. Berra Paving Co. Inc. ("Plaintiff"), a Missouri corporation located in St. Louis, Missouri and purchaser of a classic automobile, and Defendant Legendary Motorcar Company Ltd. ("LMC"), the Canadian seller of the automobile. At all relevant times, Plaintiff acted through its president, John Berra ("Berra"). LMC is a company with its principal place of business in Ontario, Canada. Defendant Scott Sinclair ("Sinclair") is an individual resident of Canada who at all relevant times remained in Canada. Plaintiff filed this action on December 27, 2018 in the Circuit Court of the County of St. Louis, Missouri for violation of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. §§ 407.010 *et seq.* (Count I), fraud (Count II), and negligence per se (Count VI) against both Defendants, and breach of contract (Count III), unjust enrichment (Count IV), conversion (Count V), and negligence (Count VII)[1] against Defendant LMC only (Doc. 4). Defendants removed that action to this Court on January 2, 2019 on the basis of diversity jurisdiction (Doc. 8). The gravamen of Plaintiff's petition is that Plaintiff purchased from LMC for $280,000 an authentic, 1967 Corvette Stingray Roadster ("Corvette") that had all original

---

[1] Unlike in its other counts, Plaintiff does not indicate in the heading of Count VII whether this count applies solely to LMC or to both Defendants. However, it is clear from the body of Count VII that Plaintiff intended this count to apply only to Defendant LMC.

2

"born with"[2] parts, but that upon getting the Corvette inspected in the United States, Plaintiff learned that the Corvette had forged, non-original parts that rendered the vehicle disqualified from national Corvette judging events.

The specific facts, in the light most favorable to Plaintiff, are as follows. In September 2016, Berra telephoned LMC regarding the particulars of a vehicle LMC advertised for sale on its company website, "legendarymotorcar.com." When Berra emphasized that he was only interested in purchasing an original and authentic Corvette, LMC informed Berra that the vehicle listed "for sale" was not entirely original. LMC then informed Berra that there was another vehicle, the Corvette at issue here, in its inventory that was entirely original, but that the vehicle was currently listed on the website as "not for sale." The sales person at LMC would check to see if the vehicle could be purchased. Approximately ten days later, Berra contacted LMC again to ask whether the Corvette previously listed as "not for sale" could be purchased.

LMC later contacted Berra over the phone and stated that the Corvette listed as "not for sale" was now available for $285,000. Plaintiff asserts that throughout various telephone conversations and email contacts over the following days, LMC ensured the authenticity of the vehicle. Berra then called Sinclair, a well-known expert on Corvette restoration who resided in Canada, to perform an inspection of the Corvette at LMC's premises (Doc. 12-2). Sinclair confirmed the authenticity of the vehicle. Berra then purchased the Corvette for $280,000 and signed a bill of sale evidencing the same, and he paid for the Corvette's shipment from Canada to Missouri (Doc. 4-1).

---

[2] "Born With" is a Corvette collector's term of art meaning the engine or other part designated "born with" is the original part installed by the GM Corvette factory at the time of original assembly of the vehicle (*See* Doc. 4 at 2).

Plaintiff asserts that upon having the Corvette inspected in Missouri for Corvette judging events, Corvette inspectors in Missouri refused to certify the vehicle as original because the engine stamp was forged. Plaintiff also sent photos to a National Corvette Restorers Society Judge in New York who refused to certify the engine as original to the car. Plaintiff contacted LMC about the engine stamp. Plaintiff alleges LMC called Plaintiff on at least five occasions to campaign for the authenticity of the Corvette. LMC refused to rescind the sale.

On January 16, 2019, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11). Specifically, Defendants contend that Plaintiff's petition fails to satisfy Missouri's Long-Arm Statute and that the petition fails to establish specific jurisdiction.

### III. Discussion

To exercise personal jurisdiction over a non-resident defendant, the court in a diversity action must determine (1) whether the defendant is subject to the forum state's long-arm statute and (2) whether the exercise of personal jurisdiction is in accordance with the Due Process Clause. *See Dever*, 380 F.3d at 1073. "Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). The parties agree that this case concerns the Court's specific jurisdiction over Defendants (Doc. 17 at 10; Doc. 18 at 4). "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Viasystems*, 646 F.3d at 593 (emphasis added).

As a preliminary matter, the Court finds that Plaintiff has failed to establish by a preponderance of the evidence that the Court has personal jurisdiction over Defendant Sinclair. Berra initiated all contacts with Sinclair, and at Berra's request, Sinclair conducted an inspection

of the disputed Corvette in Canada (*See* Doc. 4 and Doc. 12-2).  Further, while Plaintiff purports to address the Court's jurisdiction as to Sinclair in its motion, Plaintiff fails to address the applicability of Missouri's Long-Arm Statute and the Due Process Clause to Sinclair (*See* Doc. 17).  Therefore, the Court will dismiss the claims as to Sinclair for lack of personal jurisdiction and only address the issue of personal jurisdiction over Defendant LMC.

   **A. Missouri's Long-Arm Statute**

While Missouri's "long-arm statute extends to the limits of the Due Process Clause, it does so only for acts within its enumerated categories." *Dairy Farmers of America, Inc., v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012).  The Missouri Long-Arm Statute provides jurisdiction over the following relevant act: (3) The commission of a tortious act within this state.  Mo. Rev. Stat. § 506.500.  "A party relying on a defendant's commission of a tort within [Missouri] to invoke long arm jurisdiction must make a prima facie showing of the validity of [its] claim." *State ex rel. William Ranni Assoc., Inc. v. Hartenbach*, 742 S.W.2d 134, 139 (Mo. 1987).  Although the long-arm statute nominally contemplates tortious acts occurring within the State, Missouri courts have interpreted the tortious acts prong to cover "extraterritorial acts of negligence producing actionable consequences in Missouri." *Id*.  In order to produce "actionable consequences" for an intentional tort, such as the case here, a strict deliberate design standard applies*. See Capitol Idem. Corp. v. Citizens Nat. Bank*, 8 S.W.3d 893, 903 (Mo. App. W.D. 2000) (holding that "[t]he defendant must have set in motion a course of action which was deliberately designed to move into Missouri and injure the plaintiff"). *See also Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (applying a foreseeability standard to tortious acts occurring in another state with actionable consequences in Missouri).

Here, Plaintiff alleges that LMC committed tortious acts having an effect in Missouri, namely fraud and conversion (Doc. 4). Even assuming that Plaintiff sufficiently alleges fraud and conversion, Plaintiff has failed to show that LMC set in motion a course of action which was *deliberately designed* to enter into Missouri and injure Plaintiff. *See Capitol Indem. Corp.*, 8 S.W.3d at 903. It was not foreseeable to LMC, a Canadian company, for a federal district court in Missouri to exercise personal jurisdiction limited to its website or advertising presence here. LMC's contacts with Berra via telephone and email to confirm the authenticity of the vehicle and negotiate the contract to purchase the Corvette do not overcome this threshold. Further, assuming that LMC's tortious conduct resulted in actionable consequences in Missouri, the Court cannot exercise personal jurisdiction over LMC because such exercise would not comport with the Due Process Clause of the Fourteenth Amendment. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

### B. Due Process Requires Minimum Contacts

The Due Process Clause requires "minimum contacts" between the nonresident defendant and the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id*. at 297. The defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate," thus invoking the benefits and protections of the state's laws. *Id*. *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (due process requires that a defendant purposefully direct its activities at the forum state in a suit that "arises out of" or "relates to" these activities in order to be subject to personal jurisdiction in the forum).

The Eighth Circuit has "established a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014). Those five factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of the contacts; (3) the relation to the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Id.* "Although the first three factors are primary factors, and the remaining two are secondary factors, we look at all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592-93 (8th Cir. 2011).

1. **Factors One and Two—Nature, Quality, and Quantity of Defendants' Contacts with Missouri**

Plaintiff argues that LMC conferred specific jurisdiction through its website "legendarymotorcar.com." However, a "website's accessibility in Missouri alone is insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 796. The Eighth Circuit has adopted the so-called "*Zippo* test" when considering the sufficiency of internet contacts under a specific jurisdiction analysis. *Id.* Named for the case of *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), the "*Zippo* test" uses a "sliding scale" to measure the sufficiency of a defendant's contacts to determine specific personal jurisdiction, with the scale running from active contract formation and repeated transmission of computer files, to mere posting of information on a website. *Id.* at 1124.

LMC's website is more akin to "mere posting of information" than to "active contract formation." *Id.* Importantly, users of the website can view LMC's current and past inventory, but they cannot purchase any items through the website (Doc. 12-1). The user must affirmatively contact LMC via electronic mail or telephone to make a purchase. *Id.* Berra's own

7

actions support the notion that the website is largely informational by design. When Berra was initially interested in the vehicle that was listed "for sale" on LMC's website, Berra called LMC to inquire about specific details about the vehicle, namely whether the vehicle was original and authentic (Doc. 4). Berra has not demonstrated in the petition that he was ready to enter into a contract to purchase the vehicle, but rather indicates that he was only interested in obtaining preliminary information about the vehicle. The Corvette that Berra did purchase was listed on LMC's website as "not for sale" (Doc. 12). Accordingly, any information on the website about the purchased Corvette was informational. Nothing about the website suggests that LMC "purposefully directed [its] activities at [Missouri] residents" to satisfy the "specific" prong of the "minimum contacts" analysis. *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (quoting *Burger King*, 471 U.S. at 472). Therefore, LMC's presence on the internet is insufficient to establish specific personal jurisdiction.

Plaintiff additionally asserts that LMC's contacts with Berra prior to contract formation were sufficient to confer personal jurisdiction. The gravamen of this argument is that LMC or agents of LMC reached out to Berra via multiple phone calls and emails in which LMC confirmed the Corvette's authenticity. Periodic e-mails, phone calls, and similar communications are "the type of attenuated contacts that the Eighth Circuit has routinely found insufficient to satisfy the Due Process minimum contacts standard." *See, e.g., Viasystems*, 646 F.3d at 594 (explaining that "scattered e-mails, phone calls, and a wire-transfer of money to [the plaintiff] in Missouri . . . does not constitute a 'deliberate' and 'substantial connection' with the [forum] state"). LMC's communications with Berra also cannot amount to conferral of jurisdiction because Berra is the one who initiated contact with LMC. *See Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 521, 523-24 (8th Cir. 1996)

(plaintiff initiated the business relationship and all face-to-face meetings occurred in Singapore); *contra K-V Pharm. Co.*, 648 F.3d at 593 (defendant proposed a meeting in Missouri and traveled to Missouri to re-negotiate the contract). Accordingly, these factors favor LMC.

### 2. Factor Three—Relationship Between Cause of Action and Contacts

Plaintiff argues that specific jurisdiction is conferred on this Court because LMC intended the effects of the alleged underlying intentional fraud to be felt in Missouri (Doc. 17 at 16). Nevertheless, Due Process also requires "minimum contacts" when intentional torts, as is the case here, are involved. *Walden v. Fiore*, 571 U.S. 277, 286 (2014). It is "insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff" to establish personal jurisdiction over a defendant. *Id*. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id*. The "minimum contacts" analysis looks to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285. The Eighth Circuit allows a state to assert personal jurisdiction over a defendant based on the in-state effects of a defendant's extraterritorial tortious acts only if those acts "(1) were intentional; (2) were *uniquely or expressly aimed at the forum*, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]." *Viasystems*, 646 F.3d at 594 (emphasis added) (quoting *Johnson*, 614 F.3d at 796). This analysis is otherwise known as the *Calder* effects test. *Calder v. Jones*, 465 U.S. 783, 790 (1984). The Eighth Circuit construes the *Calder* effects test narrowly, holding that "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 797.

Even assuming that LMC intentionally misrepresented the authenticity of the Corvette, which would satisfy the first prong of the *Calder* effects test, as to the second prong, there is no evidence that LMC's actions were uniquely or expressly aimed at Missouri; neither LMC's website nor the postings on it specifically target Missouri. *Johnson*, 614 F.3d at 796. LMC's contacts with Missouri were sporadic, random, and fortuitous, and they were at the sole initiation of Berra himself. To the extent Plaintiff has made a prima facie showing that LMC's extraterritorial conduct was tortious, and that Plaintiff felt some of the effects in Missouri, Plaintiff has not shown that LMC's allegedly tortious conduct was purposefully aimed at Missouri. *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) ("Specific jurisdiction . . . is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposefully directed its activities at the forum state and the claim arose out of or relates to those activities."). The third factor weighs in favor of LMC.

### 3. Factor Four—Interests of Missouri in Providing Forum for Residents

The fourth factor, a secondary factor set forth in *K-V Pharm. Co.*, 648 F.3d at 592-93, weighs in favor of Plaintiff. Missouri clearly has an interest in providing a forum to its residents who claim to have been injured by the effects of a tort or contractional dispute. *Rafferty v. Rafferty*, No. 4:15-CV-1543 CAS, 2016 WL 319593, at *8 (E.D. Mo. Jan. 27, 2016). But this secondary factor is insufficient to resolve the jurisdictional question in favor of Plaintiff. "To conclude otherwise would render the three primary factors irrelevant in most, if not all, cases." *Cepia, LLC v. Universal Pictures Visual Programming Ltd.*, 177 F. Supp. 3d 1129, 1150 (E.D. Mo. 2016).

### 4. Factor Five—Convenience of the Parties

The fifth factor is largely neutral. A trial in Missouri would inconvenience LMC as much as a trial elsewhere would inconvenience Plaintiff. However, to the extent the fifth factor is given any weight, it favors LMC. Neither Plaintiff nor LMC traveled outside of their home forums in connection with the agreement, but Plaintiff initiated the relationship and paid for shipment of the Corvette from Canada to Missouri. *See id.* (reasoning that the plaintiff's initiation of the business agreement was relevant in finding that convenience of the parties favored the defendant). To the extent this secondary factor influences the "minimum contacts" analysis, any such evidence tilts in favor of LMC and against a finding of personal jurisdiction in this case.

### IV. Conclusion

The Court finds that Plaintiff has not presented sufficient evidence to conclude that either LMC or Sinclair is subject to personal jurisdiction in the Eastern District of Missouri. LMC's conduct does not satisfy any relevant provision of the Missouri long-arm statute, and Plaintiff has not shown that LMC has sufficient minimum contacts with Missouri to comport with the Due Process Clause.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Legendary Motorcar Company Ltd. and Scott Sinclair's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11) is **GRANTED** and this matter is **DISMISSED, without prejudice**.

A separate order of dismissal will accompany this memorandum and order.

Dated this 3rd day of June, 2019.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE